PER CURIAM.
These consolidated cases have one issue common to all: Did the tax recipient bodies in Orleans Parish correctly determine the millage rate applicable to the assessed valuation of property when collecting ad valo-rem taxes from Orleans Parish property owners? The answer depends upon the interpretation of Section 23 of Article VII of Louisiana’s Constitution of 1974.
Section 23. Prior to the end of the third year after the effective ¿ate of this constitution, the assessors and the Louisiana Tax Commission or its successor shall complete determination of the fair market value or the use value of all property subject to taxation within each parish for use in implementing this Article. Except as provided in this Paragraph, the total amount of ad valorem taxes collected by any taxing authority in the year in which Sections 18 and 20 of this Article are implemented shall not be increased or decreased, because of their provisions, above or below ad valorem taxes collected by that taxing authority in the year preceding implementation. To accomplish this result, it shall be mandatory for each affected taxing authority, in the year in which Sections 18 and 20 of this Article are implemented, to adjust millages upwards or downwards without regard to millage limitations contained in this constitution, and the maximum authorized millages shall be increased or decreased, without further voter approval, in proportion to the amount of the adjustment upward or downward. Thereafter, such millages shall remain in effect unless changed as permitted by this constitution. Nothing herein shall prohibit a taxing authority from collecting, in the year in which Sec *1155 tions 18 and 20 of this Article are implemented or in any subsequent year, a larger dollar amount of ad valorem taxes by (a) levying additional or increased mil-lages as provided by law; (b) placing additional property on the tax rolls; or (c) increases in the fair market or use value of property after the first determination of that value to implement this Article. This Section shall not apply to millages required to be levied for the payment of general obligation bonds.
After approval by the voters of the new Constitution, in response to Section 23, the Orleans Parish assessors began the enormous task of revaluing property in New Orleans at its fair market value to determine its assessed valuation. The assessed valuation would be either ten or fifteen percent of fair market value, depending on the classification of the property, and this would become the tax base for property in New Orleans. The tax recipient bodies began preparations to adjust the millage rates to be applied to the new tax base, anticipating receipt from the assessors of the new assessed valuation before the end of 1977. They also anticipated adjusting the permanent millage rates by use of the assessed valuation for 1977 as a base year.
The assessors, however, did not revalue the property at fair market value for 1977, and, of course, they did not submit to the tax recipient bodies the assessed valuation of property for that year. The tax recipient bodies, believing Section 23 required millage rates to be adjusted by use of the assessed valuation for the year 1977 as a base year, estimated the 1977 assessed valuation and adjusted the millage rates based on that estimate.
The assessors completed revaluation of the property in 1978, and submitted to the tax recipient bodies the assessed valuation based on fair market values for that year, 1978.
The millage rates determined by the tax recipient bodies using their estimates of an assessed valuation for 1977 are higher than the millage rates would be if the assessed valuation for 1978 were used by them as the base year in determining permanent millage rates. ■
As a result, whether the base year is 1977 or 1978 is crucial. The tax recipient bodies argue Section 23 of the Constitution sets 1977 as the base year. The assessors argue that 1978 is the year, hence the permanent millage rates set by the tax recipient bodies are too high.
Although not nearly as important, another issue arose as a result of the tax recipient bodies, relying on Section 23, subsection c, applying their estimated millage rates to the increases in fair market value from 1977 to 1978. Mr. and Mrs. Childress paid taxes under protest, arguing that Section 23(c) only permits the tax recipient bodies to apply the adjusted millage rate to increases after 1978, not to increases in fair market value from 1977 to 1978. They have filed suit to recover the additional amount paid as taxes under protest, as individuals and as representatives of all taxpayers who they allege overpaid their taxes.
During trial the assessors and the tax recipient bodies stipulated as to fair market value for 1977 and the recipient bodies now argue that the stipulated fair market value of 1977 should be used to set the permanent millage rate.
The Trial Judge agreed with the assessors and held that the millage rates established by the tax recipient bodies were not authorized by either the Constitution or Statutes and ordered the tax recipient bodies to reduce the rates. The Trial Judge did not reach the merits of Mr. and Mrs. Childress’ claim because after he ruled the Childresses could bring a class action suit, that ruling was appealed.
We believe that the tax recipient bodies correctly interpreted and applied Section 23 when determining the millage, and we reverse. As a consequence, we do not have to decide if a class action may be brought by Mr. and Mrs. Childress or if the Trial Judge’s ruling that it was a class action could be appealed to this Court.
*1156 Although our decision is based upon Section 23 of Article VII, to understand Section 23 it is necessary to have in mind other sections of Article VII because Section 23 is only one of several provisions of the new constitution which changed property taxes in Louisiana. Section 18 of Article VII changed the method of determining assessed valuation, requiring all parish assessors throughout the state first to determine fair market value of land and improvements, and then to list property on the assessment rolls at 10% of fair market value for land and residential improvements and 15% of fair market value for other property. Assessed valuation of some property was to be determined by its use, but that is of no importance in this case. Section 20 provided for another change authorizing the Legislature to increase the homestead exemption.
Section 23, which is determinative of this lawsuit, recognized that in most instances property had not previously been assessed at fair market value and that assessors would have to revalue the property within their jurisdictions to conform to Section 18. Consequently, Section 23 gave the assessors three years to revalue the property in their parishes:
Section 23. Prior to the end of the third year after the effective date of this constitution, the assessors and the Louisiana Tax Commission or its successor shall complete determination of the fair market value or the use value of all property subject to taxation within each parish for use in implementing this Article.
* * * * * *
Section 23 made other changes. In most parishes changing assessed valuation to either 10% or 15% of fair market value would dramatically alter the prior valuation, increasing the tax base in some parishes and lowering it in others. If existing local millage rates remained unchanged and were applied to the new tax base, there would be either windfall increases or disastrous reductions in the taxes collected by the local tax recipient bodies. To prevent either result, Section 23 required local tax recipient bodies to adjust millage rates:
* * * * * *
Except as provided in this Paragraph, the total amount of ad valorem taxes collected by any taxing authority in the year in which Sections 18 and 20 of this Article are implemented shall not be increased or decreased, because of their provisions, above or below ad valorem taxes collected by that taxing authority in the year preceding implementation. To accomplish this result, it shall be mandatory for each affected taxing authority, in the year in which Sections 18 and 20 of this Article are implemented, to adjust millages upwards or downwards without regard to millage limitations contained in this constitution, and the maximum authorized millages shall be increased or decreased, without further voter approval, in proportion to the amount of the adjustment upward or downward. Thereafter, such millages shall remain in effect unless changed as permitted by this constitution.
******
Turning now to the issue of the permanent millage rate, all parties agree that the meaning of this part of Section 23 is clear — taxes collected were to remain the same. This meant if taxes were to remain the same, the new millage rate applied to the new tax base must equal the old rate applied to the old base. To yield constant revenues, millages must be reduced if property values increased and must be increased if property values decreased.
This general rule has great importance in the instant case because the tax bases for the years 1977 and 1978 are materially different. The 1978 base is greater because of both inflation and the surge in economic growth in Orleans Parish. Hence, applying the rule, the permanent millage rate, if determined from the lower 1977 assessed valuations, would be greater than if determined from the higher 1978 tax base. As a result, whether Section 23 refers to the year 1977 or 1978 is crucial.
*1157 The assessors contend the remaining portion of Section 23 relates back to the first sentence of the Section.
Nothing herein shall prohibit a taxing authority from collecting, in the year in which Sections 18 and 20 of this Article are implemented or in any subsequent year, a larger dollar amount of ad valo-rem taxes by (1) levying additional or increased millages as provided by law; (b) placing additional property on the tax rolls; or (c) increases in the fair market or use value of property after the first determination of that value to implement this Article. This Section shall not apply to millages required to be levied for the payment of general obligation bonds.
Relying on this portion, emphasizing in particular that part of subsection c, “after the first determination of that value to implement this section ”, the assessors argue that Section 23 became effective only when they as assessors completed their valuation of property at fair market value. They also point to Sections 18 and 20 as support for the argument that these provisions were to be implemented only after they completed their work, when they determined fair market value for 1978.
This means, they argue, permanent mil-lages could be set only by use of their 1978 assessed valuation, and that taxes cannot be levied on the increase in fair market value between 1977 and 1978, but only on increases after 1978 — “after the first determination of fair market value_”. Thus, they further argue, permanent millage rate must now be reduced because the tax recipient bodies must compute the permanent millages by using the greater 1978 base. As we have said before, a larger tax base requires a lower millage to yield constant tax dollars.
The Trial Judge found the tax recipient bodies were wrong in using 1977 as a base year and held that the increase in millage rates was not authorized until 1978, and that 1978 would be the base year to determine permanent millages. He ordered a reduction in the millage rates, not only for the reasons argued by the assessors, but because, as he said in his reasons for judgment, “... Section 35 provides that the Louisiana Constitution ‘shall become effective at twelve o’clock midnight on December 31, 1975’ [sic] ... [hence] increases in ad valorem taxes should not be collected until the first year after the first determination of that fair market value of the property, which was 1978.”
We disagree because Section 23 required assessors to determine the fair market value of property before the end of “the third year after the effective date of this Constitution”. Since the Constitution became effective midnight, December 31, 1974, not 1975 as the Trial Judge said, this meant before December 31, 1977. The Trial Judge erred by misreading Section 35 which clearly provides the effective date is twelve o’clock midnight of December 31, 1974. Therefore, Section 23 must be interpreted to set December 31, 1977, not December 31, 1978, as the deadline for the assessors to determine fair market value. Consequently, 1977 is the tax base year that must be used to compute permanent millages.
We also reject the argument of the assessors that Section 23 is effective only when implemented by their determination of fair market value — and then only when the assessors have had time to do their work.
Section 23 assumes three years was ample time for assessors throughout the state to revalue the property. If it was not, this does not mean Section 23 can be implemented only after the assessors first make the determination of fair market value. The controlling fact is not when the assessors finally determined fair market value but only what the fair market value was in 1977 — within three years after the Constitution’s effective date. We do not read Section 23 so as to give assessors the prerogative of selecting another year for revaluation. Nor do we believe any statute authorizes the assessors to select any other year. Hence, when in the course of the trial, the parties stipulated as to fair market value and the assessed valuation of *1158 property in 1977, this was sufficient to establish the 1977 tax base and was conclusive of the issue. Further examination shows that the tax recipient bodies’ estimate of fair market value and the tax base was remarkably close to the fair market value and tax base stipulated during trial. Hence, their calculations of the authorized permanent milla ge rate were correct. As a result, there is no need to order either adjustment of the rate or refunds to taxpayers. Since we have concluded the tax recipient bodies were right, the assessors wrong, and that the Trial Judge committed manifest error, we need not consider either the propriety of a class action by taxpayers in this case or the propriety of the appeal of the ruling that this was a class action.
We reverse and hold that the tax recipient bodies were correct in using their estimated 1977 fair market values and assessed valuation to compute the permanent millage rate, and they were correct in applying that rate to the increases between 1977 and 1978.
REVERSED.