Dear Representative Armstrong:
Pursuant to an election held on October 6, 1990, the Louisiana Constitution of 1974 (the "Constitution") was amended by adding Paragraph (E) to Article 6, Section 26. Paragraph (E) authorized the City of New Orleans to levy taxes for the year 1991 and thereafter not to exceed five mills for fire protection and not to exceed five mills for police protection. In 1991, the New Orleans City Counsel levied five mills for police protection and four mills for fire protection. In 1992, the City increased the millages for police and fire protection to 5.26 mills and 5.21 mills respectively. Each of these millages exceed the five mills limitations contained in Paragraph (E) and prompted the request for a legal opinion of this office as to the legality of the millage rates in excess of five mills. According to the City Treasurer, the millage increases were necessitated because of the City's decrease in its 1992 assessed valuation and are authorized under the provisions of Article 7, Section 23 of the Constitution relating to the adjustment of ad valorem tax millages.
The following legal questions must be answered in order to render this opinion:
 1. Are the millage rates set forth in Article 6, Section 26(E) absolute maximums?
 2. Do the provisions of Article 7, Section 23 of the Constitution provide authority to adjust the fire and police millages?
Article 6, Section 26(E) states in part:
 "(E) Additional Taxes for Orleans Parish. In addition to any millage authorized by Paragraph (A) of this Section, the governing authority of Orleans Parish may levy annually, for the year 1991 and thereafter, an additional ad valorem tax for fire protection not to exceed five mills on the dollar of assessed valuation and an additional ad valorem tax for police protection not to exceed five mills on the dollar of assessed valuation. The millage rates for such additional ad valorem taxes may not be increased. (emphasis added) . . ."
The underlined portions in Paragraph (E) explicitly provide that the millages are not to exceed five mills each and further mandate that such taxes ". . . may not be increased." The apparent intent of Paragraph (E) is to establish absolute maximum fire and police taxes, however, this simplistic answer does not resolve the effect of the authority to adjust millages as contained in Article 7, Section 23.
A brief history of Part II of Article 7, relating to property taxation, may be helpful in determining its intent. When the Constitution became effective at midnight, December 31, 1974, Article 7 thereof contained several new provisions relating to property taxation. Section 18 significantly changed assessed valuation to require its computation at either 10% or 15% of fair market value of property. Another provision contained in Section 23 mandated that, "Prior to the end of the third year after the effective date of this constitution, the assessors and the Louisiana Tax Commission or its successor shall complete determination of the fair market value or the use value of all property subject to taxation within each parish for use in implementing this Article. . . ." The court in League of Women Voters v. City of New Orleans, 449 So.2d 1153 (La.App. 4th Cir. 1984) decided that December 31, 1977 was the deadline for the assessors to determine fair market value. It was apparently obvious to the members of the Constitutional Convention that the effect of altering the existing tax base could have either beneficial or devastating effects on tax revenues of political subdivisions, depending upon the increase or decrease in assessed valuations. If assessments decreased, tax revenues received using the existing maximum authorized millage rates would have been less than collected in the prior year. On the other hand, a substantial increase in assessed valuation would benefit a taxing authority, to the detriment of property owners, with excess tax revenues.
To prevent such results, Section 23 provided a method to adjust ad valorem tax millages and reads, in part, as follows:
 ". . . Except as provided in this Paragraph, the total amount of ad valorem taxes collected by any taxing authority in the year in which Sections 18 and 20 of this Article are implemented shall not be increased or decreased, because of their provisions, above or below ad valorem taxes collected by that taxing authority in the year preceding implementation. To accomplish this result, it shall be mandatory for each affected taxing authority, in the year in which Sections 18 and 20 of this Article are implemented, to adjust millages upwards or downwards without regard to millage limitations contained in this constitution, and the maximum authorized millages shall be increased or decreased, without further voter approval, in proportion to the amount of the adjustment upward or downward. . . ."
Please note that Article 14, Section 13 of the Constitution set the effective date of Sections 18 and 20 as January 1, 1978 and that the provisions of the Constitution of 1921 governing matters covered by those sections would continue to apply until such effective date.
In essence, Section 23 required the adjustment upwards or downwards of the existing maximum authorized millages, so that the total amount of tax revenues collected in 1978 would not be more or less than the ad valorem taxes collected in 1977. For the purpose of this memorandum, "maximum authorized millage" means those specific millage rates originally set forth in the Constitution. Such millage adjustments were mandatory, regardless of constitutional millage limitations, and required no voter approval. Section 23 also required that the new maximum authorized millages would remain in effect unless changed as permitted by the constitution. See League of Women Voters v. City of New Orleans, So.2d 1187, 1189 (La.App. 4th Cir. 1979).
Article 7, Section 18(F) of the Constitution provides: "All property subject to taxation shall be reappraised and valued in accordance with this Section, at intervals of not more than four years." The first reappraisal of property, therefore, was required to occur not later than four years after the effective date of Section 18.
Prior to the first reappraisal as required by Section 18(F), Section 23 was amended (effective December 8, 1980) and authorized and permitted an adjustment of millages. Paragraph (B) was added to Section 23 and reads as follows:
 "(B) Subsequent Adjustments. Except as otherwise permitted in this Section, the total amount of ad valorem taxes collected by any taxing authority in the year in which the reappraisal and valuation provisions of Section 18, Paragraph (F) of this Article are implemented shall not be increased or decreased because of a reappraisal or valuation or increases or decreases in the homestead exemption above or below the total amount of ad valorem taxes collected by that taxing authority in the year preceding implementation of the reappraisal and valuation. To accomplish this result, the provisions of millage adjustments relative to implementation of Section 18 and Section 20 of this Article, as set forth in Paragraph (A) of this Section shall be mandatory. Thereafter, following implementation of each subsequent reappraisal and valuation required by Paragraph (F) of Section 18 of this Article, the millages as fixed in each such implementation shall remain in effect unless changed as permitted by Paragraph (C) of this Section."
Paragraph (B) authorizes the adjustment of the millages and further states that following the implementation of each subsequent reappraisal and valuation (i.e., after first reappraisal) the millage, as fixed in each such implementation, will remain in effect unless changed as permitted by Paragraph (C) of Section 23.
Paragraph (C) states:
 "(C) Increases Permitted. Nothing herein shall prohibit a taxing authority from collecting, in the year in which Sections 18 and 20 of this Article are implemented or in any subsequent year, a larger dollar amount of ad valorem taxes by (1) levying additional or increased millages as provided by law or (2) placing additional property on the tax rolls. Increases in the millage rate in excess of the rates established as provided by Paragraph (B) above but not in excess of the prior year's maximum authorized millage rate may be levied by two-thirds vote of the total membership of a taxing authority without further voter approval but only after a public hearing held in accordance with the open meetings law."
Since the millage rates contained in Article 6, Section 26(E) were not authorized to be levied until 1991, the five mills constitutes the "prior year's maximum authorized millage rate" for purposes of the increases authorized by Article 7, Section 23(C).
Paragraph C of Section 23 allows an increase in the millage rates in excess of the rates established as a result of reappraisal, but not in excess of the prior year's maximum authorized millage rates, if approved by a two-thirds vote of the total membership of the taxing authority. Upon each reappraisal, subsequent to the first reappraisal, a new millage rate would be calculated. If the assessed valuation increased, then the new millage rate would either (1) be adjusted downward so that there would not be an increase in the ad valorem taxes collected above the ad valorem taxes collected in the preceding year or (2) at the option of the governing authority by a two-thirds vote, be increased to a rate not exceeding the maximum authorized millage rate. See LSA-R.S. 47:1705. If, however, the assessed valuation, as determined by such reappraisal decreased, the millage must be proportionately increased as per Article 7, Section 23(B). To the extent the increase results in a rate that exceeds the five mills, it then becomes the new "prior year's maximum authorized millage rate" for purposes of future reassessments.
Therefore, it is the opinion of this office that:
 1. The provisions of Article 6, Section 26(E) of the Constitution authorize a maximum 5 mills ad valorem tax rate for fire protection and for police protection;
 2. Since this millage was established well after the initial 1978 adjustment of millages mandated by Article 7, Section 23(A), the five mills constitutes the "prior year's maximum authorized millage rate" for purposes of the increases authorized in Section 23(C).
 3. The millages may be proportionately increased pursuant to Article 7, Section 23(C) if, as a result of reappraisal, the assessed valuation decreased. This millage rate would then constitute the new "prior year's maximum authorized millage rate" for future reassessments.
 4. In the event reappraisal results in an increase in the assessed valuation, the millages must be proportionately decreased pursuant to Article 7, Section 23(B). The taxing authority may, however, increase the millage to a rate not exceeding the prior year's maximum authorized rate per Article 7, Section 23(C) and LSA-R.S. 47:1705.
Hoping this response answers your questions, I remain,
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: MARTHA S. HESS Assistant Attorney General
RPI/MSH/jav 2755m